CECILIA N. BRENNAN, ESQ. (SBN 243954)
HKM EMPLOYMENT ATTORNEYS LLP
401 WEST A STREET, SUITE 200 (#9)
SAN DIEGO, CALIFORNIA 92101
Tel/Fax: (619) 717-6410
Email: cbrennan@hkm.com

Ricardo J. Prieto, Esq. (*PRO HAC VICE PENDING*)
Texas State Bar No. 24062947
Melinda Arbuckle, Esq.
California State Bar No. 302723
Texas State Bar No. 24080773
WAGE AND HOUR FIRM
5050 Quorum Drive, Suite 700
Dallas, Texas 75254
(214) 489-7653 – Telephone
(469) 319-0317 – Facsimile
Email: rprieto@wageandhourfirm.com
Email: marbuckle@wageandhourfirm.com

Attorneys for PLAINTIFF KIRTUS MANZINI

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Kirtus Manzini, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Ledcor Industries (USA) Inc.,<br><br>Defendant. | Case No. '26CV3340 RBM MSB<br><br>**PLAINTIFF'S ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.);*<br><br>(2)Failure to Pay for All Hours Worked Under Nevada Law (Nev. Rev. Stat.§§ 608.140 and 608.016); |

(3)Failure to Pay Minimum Wages in Violation of the Nevada Constitution; and

(4)Failure to Pay Overtime under Nevada Law (Nev. Rev. Stat.§§ 608.140 and 608.018).

**SUMMARY**

1. Kurtis Manzini ("Manzini") brings this class and collective action to recover unpaid wages and other damages from Ledcor Industries (USA) Inc. ("Ledcor") for violations of the Fair Labor Standards Act (FLSA) and Nevada law.

2. Ledcor employed Manzini as one of its Hourly Employees (defined below)

3. Ledcor paid Manzini and the other Hourly Employees by the hour.

4. Manzini and the other Hourly Employees regularly work more than 40 hours a Workweek.

5. However, Ledcor does not pay Manzini and the other Hourly Employees for all their hours worked, including overtime hours.

6. Rather, Ledcor requires Manzini and the other Hourly Employees to suit out in protective clothing and safety gear necessary to perform their job duties, prior to the start of their shifts.

/ / /

7. Likewise, Ledcor requires Manzini and the other Hourly Employees to change out of their safety gear and protective clothing "off the clock" following the end of their shifts.

8. But Ledcor does not pay Manzini and the other Hourly Employees for this time before and after their shifts.

9. Ledcor's pre/post shift off-the-clock policy violates the FLSA and Nevada law by depriving Manzini and the other Hourly Employees of wages, including overtime wages, for all hours worked.

10. Likewise, Ledcor's pre/post shift off the clock policy violates Nevada Law by depriving Manzini and the other Hourly Employees of timely payment of earned wages for all hours worked upon termination of employment.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. This Court has supplemental jurisdiction of the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

13. This Court has general personal jurisdiction over Ledcor because Ledcor maintains its principal place of business in San Diego, California.

14. Venue is proper because Ledcor maintains its principal place of business in San Diego, California, which is in the Southern District of California. See 28 U.S.C. § 1391(b)(1).

## PARTIES

15. Ledcor employed Manzini in its Ledcor Mine from approximately November 2018 to December 2024.

16. Ledcor classified Manzini as non-exempt and paid him $42.00 per hour.

17. Ledcor subjected Manzini to its pre/post shift off the clock policy.

18. Manzini's written consent is attached as Exhibit "A".

19. Manzini brings this class and collective action on behalf of himself and other similarly situated Ledcor employees who were also subject to Ledcor's pre/post shift off the clock policy.

20. The FLSA collective of similarly situated employees is defined as:

**All hourly Ledcor employees during the past 3 years through final resolution of this action ("FLSA Collective Members").**

21. Manzini also seeks to represent a class under Nevada law pursuant to FED. R. CIV. P. 23.

22. The Nevada Class of similarly situated employees is defined as:

**All hourly Ledcor employees during the past 4 years in Nevada through final resolution of this action ("Nevada Class Members").**

23. The FLSA Collective Members and Nevada Class Members are collectively referred to as the "Hourly Employees."

24. Ledcor is a Washington corporation.

25. Ledcor may be served with process by serving its registered agents: Koy

Saechao, Rebecca Vang, Alex Jenkins, Wendy Harris, Skylar Leih, Melissa Dekoven, Maddie Bright, Josh Swindell, Aaron Caneles, at 1505 Corporation CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Sacramento, California 95833.

**FLSA COVERAGE**

26. At all relevant times, Ledcor has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

27. At all relevant times, Ledcor has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

28. At all relevant times, Ledcor has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as personal protective equipment, tools, drills, computers, tablets, etc.—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

29. At all relevant times, Ledcor has had an annual gross volume of revenue made or business done of over $500,000 each year.

30. At all relevant times, Manzini and the other Hourly Employees have been Ledcor's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

31. At all relevant times, Manzini and the other Hourly Employees have been engaged in commerce or in the production of goods for commerce.

## FACTS

32. Ledcor operates numerous mines located in Nevada, California, and Arizona. See https://www.ledcor.com/our-projects/project-gallery/project-gallery-mining (last visited on 5/15/26).

33. To meet its business objectives, Ledcor hires workers, like Manzini and the other Hourly Employees.

34. While exact job titles and job duties may differ, Manzini and the other Hourly Employees are all subject to Ledcor's same or similar illegal policies, its pre/post shift off-the-clock policy, while performing the same or similar work.

35. For example, Manzini worked for Ledcor as a maintenance supervisor from approximately November 2018 to December 2024. Manzini worked at Defendant's mine located in Rabbit Springs Rd., Luning, Mineral County, Nevada.

36. As a maintenance supervisor, Manzini's job duties included operating mining equipment, ensuring machines operate smoothly, maintaining compliance with safe operating guidelines, maintaining stable and ventilated mining areas, loading trucks, as directed by Ledcor.

37. Manzini's job duties likewise included donning and doffing safety gear and protective clothing on Ledcor's premises before and after his scheduled shifts.

38. Ledcor paid Manzini by the hour at the rate of $42 per hour.

39. Throughout his employment, Manzini worked approximately 558-60 hours a work week.

40. Likewise, the other Hourly Employees generally work overtime.

41. Ledcor tracks Manzini's and the other Hourly Employees' "on the clock" hours using the timekeeping system it selects and controls.

42. But throughout their employment, Ledcor has not paid Manzini and the other Hourly Employees for all their hours worked.

43. Instead, Ledcor subjects Manzini and the other Hourly Employees to its pre/post shift off the clock pay scheme.

44. For example, Ledcor required Manzini to dress out in his protective clothing and safety gear (including hard hat, reflective clothing, eye protection, steel toed boots, safety glasses, gloves) "off the clock," on its premises and without compensation.

45. This took Manzini approximately 30 minutes each workday to put on equipment.

46. Manzini could not perform his job duties in accordance with Ledcor's policies, procedures, and expectations without this protective clothing, safety gear, equipment, and instruction.

47. Manzini could not safely perform his job duties in accordance with Ledcor's policies, procedures, and expectations without this protective clothing, safety gear, equipment, and instruction.

48. Indeed, much of the safety gear Manzini must utilize is mandated by federal regulation. See e.g., 29 C.F.R. § 1910.132; 30 C.F.R. § 56, et seq; 30 C.F.R. § 57, et seq.

49. The donning of protective clothing and safety gear and obtaining appropriate

safety instruction were integral and indispensable work duties for Manzini because these duties were fundamentally intertwined with his other mining job duties.

50. Likewise, Ledcor required Manzini to remove and store his safety gear and protective clothing after “clocking out” for his shifts, “off the clock” and without compensation.

51. This took Manzini approximately 30 minutes each workday.

52. Manzini could not perform his job duties in accordance with Ledcor’s policies, procedures, and expectations without removing and storing his safety gear and protective clothing.

53. Manzini could not safely perform his job duties in accordance with Ledcor’s policies, procedures, and expectations without removing his safety gear and protective clothing.

54. The removal and storage of his safety gear and protective clothing are therefore integral and indispensable work duties for Manzini.

55. But under its pre/post shift off the clock policy, Ledcor did not compensate Manzini for the same.

56. Thus, because of its pre/post shift off the clock policy, Ledcor failed to pay Manzini wages for all hours worked, including overtime wages for all overtime hours worked, in violation of the FLSA and Nevada Law.

57. Manzini and the other Hourly Employees perform their jobs under Ledcor’s supervision and use materials, equipment, and technology Ledcor approves and supplies.

58. Ledcor requires Manzini and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

59. At the end of each pay period, Manzini and the other Hourly Employees receive wages from Ledcor that are determined by common systems and methods that Ledcor selects and controls.

60. But, just as with Manzini, Ledcor fails to pay the other Hourly Employees for all their hours worked.

61. Indeed, Ledcor subjects the other Hourly Employees to its pre/post shift off the clock policy.

62. Specifically, like Manzini, Ledcor requires the other Hourly Employees to dress out in their protective clothing and safety gear (including hard hat, reflective clothing, eye protection, steel toed boots, safety glasses, dust masks, respirators, gloves) "off the clock," and without compensation

63. As with Manzini, much of the safety gear the other Hourly Employees must utilize is mandated by federal regulation. See e.g., 29 C.F.R. § 1910.132; 30 C.F.R. § 56, et seq; 30 C.F.R. § 57, et seq.

64. And Ledcor requires the other Hourly Employees to remove and store their safety gear and protective clothing after "clocking out" for their shifts, "off the clock" and without compensation.

65. But, like Manzini, the other Hourly Employees are forced to perform this

compensable work "off the clock" before and/or after their scheduled shifts.

66. And, just as with Manzini, Ledcor does not pay the other Hourly Employees for this integral and indispensable work they perform "off the clock" before and after their scheduled shifts.

67. And like Manzini, these job duties take the other Hourly Employees approximately to 30 minutes each workday.

68. Ledcor fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that Ledcor does not want performed.

69. And Ledcor knows, should know, or recklessly disregards whether Manzini and the other Hourly Employees routinely perform work "off the clock," and without compensation, before and after their scheduled shifts.

70. Thus, Ledcor requires, requests, suffers, or permits Manzini and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

71. Despite accepting the benefits, Ledcor does not pay Manzini and the other Hourly Employees for the compensable work they perform "off the clock" before and after their scheduled shifts.

72. Thus, under Ledcor's pre/post shift off the clock policy, Manzini and the other Hourly Employees are denied wages, including overtime wages, for compensable work they perform "off the clock" before and after their scheduled shifts, in violation of

the FLSA and Nevada law.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

73. Manzini brings his claims as a class and collective action under Section 216(b) of the FLSA and under Nevada law pursuant to FED. R. CIV. P. 23.

74. Like Manzini, the other Hourly Employees are victimized by Ledcor's pre/post shift off the clock policy.

75. Other Hourly Employees worked with Manzini and indicated they were paid in the same manner, performed similar work, and were subject to Ledcor's same pre/post shift off the clock policy.

76. Based on his experiences with Ledcor, Manzini is aware Ledcor's pre/post shift off the clock policy was imposed on other Hourly Employees.

77. The Hourly Employees are similarly situated in the most relevant respects.

78. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to wages for all hours worked, including overtime wages.

79. Rather, the Hourly Employees are held together by Ledcor's pre/post shift off-the-clock policy, which systematically deprive them of required wages, including required overtime wages, for all hours worked, including hours in excess of 40 hours in a workweek.

80. Therefore, the specific job titles or precise job locations of the Hourly Employees do not prevent class or collective treatment.

81. Ledcor's failure to pay these employees overtime wages at the rates required by the FLSA and/or Nevada law results from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of the Hourly Employees.

82. The Hourly Employees are denied earned wages and overtime wages at the required premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

83. Ledcor's records show the number of hours the Hourly Employees worked "on the clock" each workweek.

84. The back wages owed to Manzini and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

85. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Ledcor's records, and there is no detraction from the common nucleus of liability facts.

86. Therefore, the issue of damages does not preclude class or collective treatment

87. Manzini's experiences are therefore typical of the experiences of the other Hourly Employees.

88. Manzini has no interest contrary to or in conflict with the other Hourly Employees that would prevent class or collective treatment.

89. Like each Hourly Employee, Manzini has an interest in obtaining the unpaid

wages owed under federal and Nevada law.

90. Manzini and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

91. Manzini retained counsel with significant experience in complex class and collective action litigation.

92. A class and collective action are superior to other available means for fair and efficient adjudication of this action.

93. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Ledcor will reap the unjust benefits of violating the FLSA and Nevada law.

94. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome.

95. Indeed, the multiplicity of actions would create a hardship for the Hourly Employees, the Court, and Ledcor.

96. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

97. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual Hourly Employees.

98. Among the common questions of law and fact are:

a. Whether Ledcor's pre/post shift off the clock policy failed to compensate the Hourly Employees for all hours worked;

b. Whether Ledcor's pre/post shift off the clock policy deprived the Hourly Employees of overtime when they worked more than 40 hours in a workweek;

c. Whether Ledcor's pre/post shift off the clock policy deprived the Hourly Employees of earned wages upon termination of employment;

d. Whether Ledcor's decision not to pay the Hourly Employees all overtime wages due was made in good faith; and

e. Whether Ledcor's violations were willful.

99. Ledcor's pre/post shift off the clock policy deprived Manzini and the other Hourly Employees of wages, including overtime wages, they are owed under federal and Nevada law.

100. There are many similarly situated Hourly Employees who have been denied wages, including overtime wages, in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

101. The Hourly Employees are known to Ledcor and can be readily identified and located through Ledcor's business and personnel records.

**LEDCOR'S VIOLATIONS WERE WILLFUL**

102. Ledcor knew it was subject to the FLSA's overtime provisions and Nevada Law's minimum wage, hours of work, overtime, and earned wages provisions.

103. Ledcor knew the FLSA and Nevada law required it to pay non-exempt employees, including the Hourly Employees, for all hours worked, including overtime

wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

104. Ledcor knew each Hourly Employee worked more than 40 hours in at least one work week during the relevant period.

105. Ledcor knew it paid its Hourly Employees according to its pre/post shift off the clock policy.

106. Ledcor knew it had a duty to ensure its Hourly Employees were not performing work "off the clock" (without pay).

107. Ledcor knew it required the Hourly Employees to don and doff safety gear and protective clothing "off the clock."

108. Ledcor knew it controlled the Hourly Employees' work procedures.

109. Ledcor knew its Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs.

110. Ledcor knew its Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs.

111. Ledcor knew its Hourly Employees routinely performed this daily, required "off the clock" work for Ledcor's predominant benefit.

112 In other words, Ledcor knew its Hourly Employees performed compensable work (e.g., donning/doffing their safety gear and protective clothing and attending safety meetings) "off the clock" and without compensation.

113. Ledcor knew its pre/post shift off the clock policy failed to compensate the

Hourly Employees for all hours worked, including overtime hours, at the required rates.

114. Ledcor knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA and Nevada law.

115. Ledcor knowingly, willfully, and/or in reckless disregard carried out its pre/post shift off the clock policy that deprived the Hourly Employees of earned wages and overtime for their hours worked over 40 in a workweek, in violation of the FLSA and Nevada law.

**COUNT I**

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**

**(FLSA COLLECTIVE)**

116. Manzini bring his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

117. Ledcor violated, and is violating, the FLSA by employing non-exempt employees (Manzini and the other FLSA Collective Members) in a covered enterprise for workweeks in excess of 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

118. Ledcor's unlawful conduct harmed Manzini and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

/ / /

/ / /

119. Accordingly, Ledcor owes Manzini and the other FLSA Collective Members the difference between the rate actually paid and the required overtime rate based on all remuneration.

120. Because Ledcor knew, or showed reckless disregard for whether, its pre/post shift off the clock policy and/or bonus pay scheme violated the FLSA, Ledcor owes Manzini and the other FLSA Collective Members these wages for at least the past 3 years.

121. Ledcor is also liable to Manzini and the other FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

122. Finally, Manzini and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

**COUNT II**

**FAILURE TO PAY FOR ALL HOURS WORKED**

**(NEVADA CLASS MEMBERS)**

123. Manzini brings his claim for failure to pay for all hours worked as a class action on behalf of himself and the other Nevada Class Members under Nevada law pursuant to FED. R. CIV. 7 P. 23.

124. Manzini has a private cause of action for unpaid wages pursuant to NRS 608.140.

125. At all relevant times, Ledcor was subject to Nevada law because Ledcor was (and is) an "employer" within the meaning of Nevada law. See Nev. Rev. Stat. § 608.011.

126. At all relevant times, Ledcor employed Manzini and each Hourly Employee as its covered "employees" within the meaning of Nevada law. See Nev. Rev. Stat. § 608.010.

127. NRS 608.016 provides that "an employer shall pay to the employee[s] wages for each hour the employee[s] worked." Nev. Rev. Stat. § 608.016.

128. Specifically, pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." Nev. Admin. Code 608.115(1).

129. Ledcor failed to compensate Manzini and the other Nevada Class Members for all hours worked, as described in this Complaint.

130. Accordingly, Manzini "bring[s] a civil action to recover the difference between the amount paid to [Manzini and the Nevada Class Members] and the amount of the minimum wage," for each hour worked. Nev. Rev. Stat. § 608.260.

131. As noted, Ledcor did not compensate Manzini and the other Nevada Class Members for integral and indispensable work before and after their shifts, performed under Ledcor's direction and control and on Ledcor's premises.

132. Nevada's Minimum Wage Amendment to the Nevada Constitution, Nev. Const. Art. 15, § 16, guarantees a minimum wage for each individual hour worked, rather than as an average over a workweek.

/ / /

133. Manzini and the other Nevada Class Members have been deprived of their rightfully earned wages as a direct and proximate result of Ledcor's company-wide policies and practices.

134. As a direct and proximate result, Manzini and the other Nevada Class Members have suffered, and continue to suffer, substantial damages.

135. Ledcor regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Manzini and the Nevada Class Members.

136. Through this unlawful course of conduct, Ledcor has deprived and continues to deprive Manzini and the Nevada Class Members of records necessary to calculate with precision the compensation due to them.

137. Ledcor's actions were (and are) willfully oppressive, fraudulent and malicious, entitling Manzini and the Nevada Class Members to punitive damages.

138. Ledcor's violations were intentional.

139. Accordingly, Manzini and the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

/ / /

/ / /

## COUNT III

## FAILURE TO PAY MINIMUM WAGES

## (NEVADA CLASS MEMBERS)

140. Manzini brings his failure to pay minimum wages claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

141. Manzini has a private cause of action for unpaid wages pursuant to NRS 608.140.

142. At all relevant times, Ledcor was subject to Nevada law because Ledcor was (and is) an "employer" within the meaning of Nevada law. See Nev. Rev. Stat. § 608.011.

143. At all relevant times, Ledcor employed Manzini and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. See Nev. Rev. Stat. § 608.010.

144. Nev. Const. Art. 15, § 16 sets forth the minimum wage requirements in the State of Nevada. Section 16 provides that: The provisions of the section may not be waived by agreement between an individual employee and an employer. An employee claiming violation of the section may bring an action against his or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded

his or her reasonable attorney's fees and costs.

145. Accordingly, Manzini and the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

**COUNT IV**

**FAILURE TO PAY OVERTIME WAGES**

**(NEVADA CLASS MEMBERS)**

146. Manzini brings his failure to pay overtime claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

147. Manzini has a private cause of action for unpaid overtime wages pursuant to NRS 608.140.

148. At all relevant times, Ledcor was subject to Nevada law because Ledcor was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

149. At all relevant times, Ledcor employed Manzini and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

150. Nevada law requires that employers, such as Ledcor, pay employees, such as Manzini and the Nevada Class Members at least 1.5 times their regular rate of pay for

all hours worked in excess of 40 a workweek. Nev. Rev. Stat. § 608.018(2).

151. Manzini and the Nevada Class Members have been deprived of their overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 a workweek as a direct and proximate result of Ledcor's pre/post shift off the clock policy and bonus pay scheme.

152. Ledcor regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Manzini and the Nevada Class Members.

153. Through this unlawful course of conduct, Ledcor has deprived and continues to deprive Manzini and the Nevada Class Members of records necessary to calculate with precision the overtime compensation due to them.

154. Ledcor's actions were willfully oppressive, fraudulent and malicious, entitling Manzini and the Nevada Class Members to punitive damages.

155. Ledcor's violations were intentional.

156. Accordingly, Manzini and the Nevada Class Members are entitled to recover unpaid overtime wages owed, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

## JURY DEMAND

157. Manzini demands a trial by jury on all Counts.

/ / /

## RELIEF SOUGHT

WHEREFORE, Manzini, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Manzini and his counsel to represent the interests of the Hourly Employees;

d. An Order finding Ledcor liable to Manzini and the Hourly Employees for their unpaid overtime wages, liquidated damages, and any penalties, owed under the FLSA, plus interest;

e. An Order finding Ledcor liable to Manzini and the Hourly Employees for their unpaid minimum wages, overtime wages, earned wages, penalties, and all damages, including punitive damages, owed and available under Nevada law, plus interest;

f. A Judgment against Ledcor awarding Manzini and the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or

Nevada law;

g. An Order awarding attorney's fees, costs, and expenses;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

DATED: May 29, 2026

HKM EMPLOYMENT ATTORNEYS LLP

***/s/ Cecilia N. Brennan***

Cecilia N. Brennan, Esq. (SBN 243954)
Attorney for PLAINTIFF KIRTUS MANZINI

CECILIA N. BRENNAN, ESQ.
HKM EMPLOYMENT ATTORNEYS LLP
401 WEST A STREET, SUITE 200 (#56)
SAN DIEGO, CALIFORNIA 92101
Tel/Fax: (619) 717-6410
Email: cbrennan@hkm.com

DATED: May 29, 2026

WAGE AND HOUR FIRM

*s/ Ricardo J. Prieto*

Ricardo J. Prieto (*PRO HAC VICE PENDING*)
Texas State Bar No. 24062947
Melinda Arbuckle
California State Bar No. 302723
Texas State Bar No. 24080773
5050 Quorum Drive, Suite 700
Dallas, Texas 75254
(214) 489-7653 – Telephone
(469) 319-0317 – Facsimile
Email: rprieto@wageandhourfirm.com
Email: marbuckle@wageandhourfirm.com

ATTORNEYS FOR PLAINTIFF AND PUTATIVE COLLECTIVE ACTION MEMBERS AND CLASS MEMBERS